UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

ALLSTATE VEHICLE AND PROPERTY
INSURANCE COMPANY,

    Plaintiff,

vs.

CHARLES HOFFA, *et al.*,

    Defendants.

Case No. 3:20-cv-291

District Judge Michael J. Newman

---

**ORDER: (1) GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (DOC. NO. 28); (2) DENYING DEFENDANTS' CROSS MOTION FOR PARTIAL SUMMARY JUDGMENT (DOC. NO. 27); AND (3) TERMINATING THIS CASE ON THE DOCKET**

---

This civil case is before the Court on Allstate Vehicle and Property Insurance Company's ("Allstate") motion for summary judgment and Defendants and Counter Claimants Charles Hoffa and Michaele Hoffa's ("the Hoffas") motion for partial summary judgment.  Doc. No. 27; Doc. No. 28.  Both parties filed opposition and reply memoranda in response to, and in support of, their respective motions.  Doc. No. 29; Doc. No. 30; Doc. No. 32.  The Court has considered the foregoing, and the cross motions for summary judgment are now ripe for review.

**I.**

Like most insurance-related disputes, this case boils down to an insurance contract and how to interpret it.  The undisputed, material parts of this matter are as follows: On July 12, 2019, the Hoffas bought the subject property at 3348 Phillipsburg-Union Road in Montgomery County, Ohio.  Doc. No. 28-1 at PageID 1–2.  They signed a homeowner's insurance application with Western Reserve Mutual Casualty Company, but this fell through.  When Ms. Fike, the Hoffas' insurance agent, went to inspect the house on the property, she found the kitchen "gutted," the

house virtually empty, and the floor gone.  Doc. No. 28-2 at PageID 247.  Because of these problems, Western Reserve refused to insure the property.  Doc. No. 28-3 at PageID 256.  After the Hoffas never replied to Ms. Fike's warnings that Western Reserve would cancel the Hoffas' application for an insurance policy, Western Reserve cancelled it on September 9, 2019.  Doc. No. 28-2 at PageID 253–54; Doc. No. 28-4 at PageID 260.

On October 3, 2019, someone crashed a car into the Hoffas' garage. The Hoffas were unaware that Western Reserve had previously cancelled their insurance policy on the property.  Doc. No. 27 at PageID 194.  This surprise prompted the Hoffas to seek coverage through another insurance agency -- Allstate.  *Id.*  Acting through Mike Hild Insurance Agency, on October 7, 2019, Kayleen Adams ("Adams") spoke with Mr. Hoffa over the phone to transfer the Hoffas' insurance policies from Western Reserve to Allstate.  Doc. No. 28-6 at PageID 267–69.  Adams testified during her deposition that she put the information that Mr. Hoffa gave her into the application.  *Id.* at PageID 270–72, 274.  Likewise, Adams testified that the Hoffas indicated the home was not under major construction and simply undergoing renovation.  Doc. No. 28-5 at PageID 265–66.

After this call, Adams emailed the Hoffas for more information, and the Hoffas asked, "Does the home owners [sic] insurance shown on the quote protect during renovation? I know we talked about this but I just wanted to be double sure since our first insurance company dumped us because of the renovation."  Doc. No. 27-3 at PageID 217.  Adams replied, "Yes! Since the home is not under major construction, only renovation, there would be coverage on the dwelling while you are making upgrades to plumbing/electrical/etc. and cosmetic renovations.  As we discussed you are not demolishing walls, tearing down walls or making structural changes/additions to the dwelling, correct?"  *Id.* at 216.  The Hoffas said, "That is correct. I will get you the requested

information this afternoon when I get home, that should be around 3." *Id.* However, Mr. Hoffa demolished a half-wall on the property after the call. Doc. No. 27-1 at PageID 208, Doc. No. 32-2 at PageID 301.

Allstate issued the insurance policy on October 9, 2019 based on the application that Adams filled out during the first call with Mr. Hoffa. Doc. No. 1-6 at PageID 56; Doc. No. 27 at PageID 197. The application noted that, "Any insurance bound hereunder shall otherwise be subject in all respects to the terms and conditions of the regular policy forms of the Company at present in use and to the statements in this application." Doc. No. 1-7 at PageID 64. In the regular policy forms, Allstate stated the following:

> It is understood and agreed that the statements made by any named insured, or any applicant, in the application for insurance, during the application process, during the renewal process, or on the Policy Declarations, are warranties and are incorporated into, and shall form part of this policy.
>
> This entire policy is void from its inception if any warranty made by any named insured, or any applicant, is found to be false.

Doc. No. 1-2 at PageID 40.

After Allstate issued its policy to the Hoffas, a fire significantly damaged their home. Doc. No. 27 at PageID 197. Allstate investigated the fire and later concluded there were several inaccuracies in the Hoffas' application that constituted false warranties. *Id.*

The alleged inaccuracies included: (1) the Hoffas purchased the property in October 2019, when they actually bought the property in July 2019 (Doc. No. 1-7 at PageID 63; Doc. No. 28-1 at PageID 243); (2) the Hoffas would occupy the property within thirty days of their application, when they could not live in it because they had no certificate of occupancy (Doc. No. 28-7 at PageID 275); (3) the renovation work did not involve tearing down any walls, when the Hoffas removed their bedroom closet and living room partition -- a half-wall (Doc. No. 10-1 at PageID

3

112; Doc. No. 27 at PageID 203); (4) the Hoffas had no other cancelled insurance policy, when, in fact, Western Reserve had previously cancelled their insurance policy (Doc. No. 28-6 at PageID 274); and (5) the Hoffas did not inform Adams that someone had crashed a car through the property's garage. *Id.*; *see* Doc. No. 1-7 at PageID 62, 63, 65. Because Allstate believed the policy was void, Allstate attempted to rescind it. Doc. No. 27-6 at PageID 224–25.

Subsequently, Allstate filed this action for a declaratory judgment under the Declaratory Judgment Act, 28 U.S.C. § 2201, asking the Court to recognize that the policy is *void ab initio*. *See* Doc. No. 1 at PageID 9. The parties have diversity of citizenship and allege an amount in controversy in excess of $75,000. *Id.* at PageID 3.[1]

## II.

"Summary judgment is only appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Keweenaw Bay Indian Cmty. v. Rising*, 477 F.3d 881, 886 (6th Cir. 2007) (quoting Fed. R. Civ. P. 56(c)). "Weighing of the evidence or making credibility determinations are prohibited at summary judgment -- rather, all facts must be viewed in the light most favorable to the non-moving party." *Id*. Once "a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading[.]" *Viergutz v. Lucent Techs., Inc.*, 375 F. App'x 482, 485 (6th Cir. 2010) (citation omitted). Instead, the party opposing summary judgment has a shifting burden and "must -- by affidavits or as otherwise provided in [Fed. R. Civ. P. 56] -- set out specific facts showing a genuine issue for trial." *Id.*

---

[1] The Declaratory Judgment Act does not confer federal question on its own; there must be an independent basis for the Court's jurisdiction. *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671–72 (1950); *Auto-Owners Ins. Co. v. Ergonomics Plus, Inc.*, 63 F. Supp. 3d 754, 761–62 (E.D. Mich. 2014).

4

The Court's standard of review does not change when the parties file cross motions for summary judgment. *See Taft Broad. Co. v. United States*, 929 F.2d 240, 248 (6th Cir. 1991). Thus, in reviewing cross motions for summary judgment, the Court must still "evaluate each motion on its own merits and view all facts and inferences in the light most favorable to the non-moving party." *Wiley v. United States*, 20 F.3d 222, 224 (6th Cir. 1994). Likewise, "[t]he filing of cross-motions for summary judgment does not necessarily mean that an award of summary judgment is appropriate." *O'Donnell v. Fin. Am. Life Ins. Co.*, 328 F.R.D. 174, 186 (S.D. Ohio 2017) (citing *Spectrum Health Continuing Care Grp. v. Anna Marie Bowling Irrevocable Tr.*, 410 F.3d 304, 309 (6th Cir. 2005)).

### III.

#### A. Jurisdiction

Even though neither party raises the issue, the Court must clarify that it has jurisdiction over this dispute. *See Nationwide Mut. Fire Ins. Co. v. Willenbrink*, 924 F.2d 104, 105 (6th Cir. 1991). "In the declaratory judgment context, the normal principle that federal courts should adjudicate claims within their jurisdiction yields to considerations of practicality and wise judicial administration." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 288 (1995). Thus, the Court has no "automatic" obligation to assume jurisdiction over a declaratory judgment and must show why it chooses to address the case. *Id.* (quoting E. Borchard, *Declaratory Judgments* 313 (2d ed. 1941)).

Likewise, even where there is complete diversity, the Court's jurisdiction under the Declaratory Judgment Act is discretionary. *Id.* at 288–89 (quoting Henry J. Friendly, *Indiscretion About Discretion*, 31 Emory L.J. 747, 748 (1982)). The Sixth Circuit has clarified that a federal court must decide whether to exercise jurisdiction when "competing state and federal interests weigh in the balance, with courts particularly reluctant to entertain federal declaratory judgment actions premised on diversity jurisdiction in the face of a previously-filed state-court action."

*Adrian Energy Assocs. v. Mich. Pub. Serv. Comm'n*, 481 F.3d 414, 421 (6th Cir. 2007); *see also Bituminous Cas. Corp. v. J&L Lumber Co.*, 373 F.3d 807, 816–17 (6th Cir. 2004). But "there is no per se rule to prevent district courts from exercising jurisdiction over declaratory judgment actions related to insurance relationships and relevant exceptions to coverage." *Sec'ty Nat'l Ins. Co. v. Jamestown Union Bancshares, Inc.*, 352 F. Supp. 3d 845, 852 (M.D. Tenn. 2018) (citing *Scottsdale Ins. Co. v. Roumph*, 211 F.3d 964, 967 (6th Cir. 2000)).

Moreover, the Court must exercise jurisdiction only after engaging in a fact-specific inquiry using the following factors: (1) whether the judgment would settle the controversy; (2) whether the declaratory judgment action would serve a useful purpose in clarifying the legal relations at issue; (3) whether the judgment is simply being used for procedural fencing or to "race for res judicata"; (4) whether this declaratory action would increase friction between state and federal courts and improperly encroach upon state jurisdiction; and (5) whether there is an alternate or more effective remedy. *Scottsdale*, 211 F.3d at 968 (citations omitted).

Considering the first and second factors, exercising jurisdiction would settle this insurance dispute and clarify the legal relations at issue because it would resolve whether Allstate can evade its obligations under the policy or if Defendants are entitled to coverage under the policy. *See Sec'ty Nat'l Ins. Co.*, 352 F. Supp. 3d at 853–56 (finding first and second factors met where adjudication would resolve the immediate dispute between insurer and insured). Factor three is irrelevant to this suit because there is no simultaneous state court proceeding. *See Mikmar, Inc. v. Westfield Ins. Co.*, No. 1:20-cv-01313, 2020 WL 6127912, at *2–3 (N.D. Ohio Oct. 19, 2020). But when weighing factor four, the Court considers whether the facts underlying the dispute are important to resolving the case; whether an Ohio court may be in a better position to evaluate those facts than a federal court; and whether Ohio law closely relates to those factual issues rather than

federal law or policy. *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 560 (6th Cir. 2008). In sum, the Court is just as qualified as an Ohio court to hear this action, as "this case does not raise novel or difficult questions of state law." *Western World Ins. Co. v. Hoey*, 773 F.3d 755, 761 (6th Cir. 2014) (affirming district court's exercise of jurisdiction over insurance contract declaratory action where there were no "serious concerns about federal encroachment on the state courts …"). Hearing this claim "in a single action" would save "time and resources," satisfying factor five. *Mikmar*, 2020 WL 6127912, at *4.

All five factors therefore weigh heavily in favor of exercising jurisdiction. Moreover, "[w]hen a plaintiff seeks relief in addition to declaratory judgment, such as damages or injunctive relief, both of which a court must address, then the entire benefit derived from exercising discretion not to grant declaratory relief is frustrated, and a stay or dismissal would not save any judicial resources." *Adrian Energy Assocs.*, 481 F.3d at 422. The Court will thus exercise jurisdiction over this declaratory judgment action.

### B. Allstate's Motion for Summary Judgment

Allstate argues that it is entitled to summary judgment because the Hoffas' statements throughout the process, and contained within the application, voided the policy. Doc. No. 28 at PageID 228. In reply, the Hoffas argue that their statements were not warranties incorporated into the application, so the policy was not void. Doc. No. 27 at PageID 193. To decide Allstate's motion for summary judgment, the Court must determine whether the policy is *void ab initio* under Ohio insurance law.[2] In Ohio, insurance policies are treated like any other contract -- subject to the rules of contract interpretation. *See Nationwide Mut. Fire Ins. Co. v. Pusser*, 155 N.E.3d 839,

---

[2] Sitting in diversity, federal courts apply "the choice of law rules and substantive law of the forum state." *Smith v. Gen. Motors, LLC*, 988 F.3d 873, 879 (6th Cir. 2021) (quoting *CenTra, Inc. v. Estrin*, 538 F.3d 402, 409 (6th Cir. 2008)).

841 (Ohio 2020).  However, "[a]ll of these rules operate against the broader principle that because 'policies of insurance are in the language selected by the insurer they are to be construed strictly against the insurer, and liberally in favor of the insured.'"  *Certain Underwriters at Lloyd's of London Subscribing to Pol'y No. HMPL 18-0164 & HMPL 17-0158 v. KG Admin. Servs.*, 855 F. App'x 260, 266 (6th Cir. 2021) (quoting *Med. Prot. Co. v. Fragatos*, 940 N.E.2d 1011, 1016 (Ohio Ct. App. 2010)).  While the Court construes ambiguous provisions in an insurance policy in the insured's favor, "a court cannot create ambiguity in a contract where there is none."  *Lager*, 896 N.E.2d at 669 (citing *Hacker v. Dickman*, 661 N.E.2d 1005 (Ohio 1996)).  Instead, we must apply "the plain language of the contract."  *O'Donnell*, 328 F.R.D. at 180 (quoting *Lager*, 896 N.E.2d at 669)).

Special interpretive rules apply for insurance policies when distinguishing between warranties and representations: a misrepresentation makes a policy voidable, but a false warranty renders a policy void.  *See James v. Safeco Ins. Co. of Ill.*, 959 N.E.2d 599, 601–02 (Ohio Ct. App. 2011); *Spriggs v. Martin*, 182 N.E.2d 20, 22 (Ohio Ct. App. 1961) ("[T]he proof of the falsity of a warranty or the failure of a condition may, without proof of fraud, be sufficient to vitiate and void a contract of insurance").  "A warranty is a statement, description or undertaking by the insured of a material fact either appearing on the face of the policy or in another instrument specifically incorporated in the policy."  *Allstate Ins. Co. v. Boggs*, 271 N.E.2d 855, 858 (Ohio 1971) (citing *Hartford Prot. Ins. Co. v. Harmer*, 2 Ohio St. 452 (Ohio 1853)).  In contrast, "a representation is a statement made prior to the issuance of the policy which tends to cause the insurer to assume the risk."  *Id.*  Furthermore, "[t]he mere fact that a policy of insurance refers to the application does not make such application a part of the policy. In order to have an

8

incorporation by reference in an insurance policy, it must be done in unequivocal language on the face of the policy." *Id.*

Because Ohio "[c]ourts do not favor warranties," the language in the policy must clearly and unambiguously "provide that a misstatement by the insured shall render the policy void ab initio …." *Id.* This presents a two-part test: (1) the statements must appear on the policy's face or be incorporated into the policy; and (2) the policy's terms must unambiguously and clearly state that the insured's misstatement will render the policy *void ab initio*. *Goodman v. Medmarc Ins.*, 977 N.E.2d 128, 132 (Ohio Ct. App. 2012); *see also Unencumbered Assets, Tr. v. Great Am. Ins. Co.*, 817 F. Supp. 2d 1014, 1027 (S.D. Ohio 2011) (quoting *Boggs*, 271 N.E.2d at 858).

Allstate's contractual provisions pass both prongs of the test. First, the Hoffas' statements were included in the application, and it is undisputed that Mr. Hoffa sent his email during the application process to Adams. *See* Doc. No. 1-7 at PageID 62, 63, 65; Doc. No. 27-3 at PageID 216–17; Doc. No. 28-6 at PageID 274. Allstate's policy states that "statements made by any named insured, or any applicant, in the application for insurance, during the application process, during the renewal process, or on the Policy Declarations, are warranties and are incorporated into, and shall form part of this policy." Doc No. 1-2 at PageID 40; *see Personal Serv. Ins. Co. v. Clinton Lester*, No. 06CA12, 2006 WL 2796253, at *5 (Ohio Ct. App. Sept. 25, 2006) (stating that where the policy form includes attached documents, such as an application, "any representations made on the application become part of the policy"). Based on the plain and ordinary meaning of this provision, Allstate's policy incorporated as warranties (1) the Hoffas' statements during the phone call on October 7, 2019 (which Adams included in the application) and (2) the Hoffas' email on October 8, 2019 (sent while Adams processed the application).[3] *Kademenos v. Harbour*

---

[3] A "statement" is simply "something stated," while "process" includes "progress" or "proceeding" -- words that mean throughout the course of an event. *See Statement*, Dictionary by Merriam-Webster,

*Homeowners Ass'n*, 951 N.E.2d 125, 117 (Ohio Ct. App. 2011) (quoting *Alexander v. Buckeye Pipeline Co.*, 374 N.E.2d 146 (Ohio 1978)); *see* Doc. No. 10-1 at PageID 112; Doc No. 28-6 at PageID 268.

The second prong is easily met. *See O'Donnell*, 328 F.R.D. at 182 ("Language 'cautioning that a misrepresentation will render the policy "void," or "null and void," or "null and without effect" will satisfy this prong" (quoting *Unencumbered Assets*, 817 F. Supp. 2d at 1028)). Allstate's policy states that if any warranty is false (including the statements incorporated into the policy), then it may void the policy. Doc. No. 1-2 at PageID 40. Moreover, Allstate's policy clearly states that it is "void from its inception" if the Hoffas made any misrepresentation during the application process. *Contra James*, 959 N.E.2d at 602 ("[T]he policy language 'we may void this policy' is not a clear warning to the insured that a misstatement shall render the policy void").

When faced with analogous provisions, Ohio courts have held such policies *void ab initio* based on an insured's false statements in an application. In *Medical Protective Company v. Fragatos*, for example, the Ohio Court of Appeals found an insurance contract void when the plaintiff failed to disclose prior lawsuits in his insurance application. 940 N.E.2d 1011, 1017–18 (Ohio Ct. App. 2010). Because the company "expressly incorporated" the application into the insurance policy, "the application's warning that any material misrepresentation would render the policy null" rendered the policy void. *Id.* at 1017 (first citing *Horton v. Safe Auto Ins. Co.*, No.

---

https://www.merriam-webster.com/dictionary/statement (last visited Oct. 7, 2021); *Process*, Dictionary by Merriam-Webster https://www.merriam-webster.com/dictionary/process (last visited Oct. 7, 2021). The plain, ordinary meaning of this provision incorporates the Hoffas' emails and statements made to Adams throughout the process, as well as all statements on the application. *See, e.g.*, *Bondex Int'l v. Hartford Accident & Indem. Co.*, 667 F.3d 669, 677–78 (6th Cir. 2011) (applying Ohio law) (analyzing insurance policy definitions based on plain, ordinary meaning in dictionary); *U.S. Fid. & Guar. Co. v. Lightning Rod Mut. Ins. Co.*, 687 N.E.2d 717, 719 (Ohio 1997) (using Webster's and Black's dictionaries for the definition of "fee"); *MIKMAR, Inc. v. Westfield Ins. Co.*, 520 F. Supp. 3d 933, 940 (N.D. Ohio 2021) (quoting *In re Fifth Third Early Access Cash Advance Litig.*, 925 F.3d 265, 276 (6th Cir. 2019)).

00AP-1017, 2001 WL 664421, at *1 (Ohio Ct. App. June 14, 2001); and then citing *Jaber v. Prudential Ins. Co. of Am.*, 681 N.E.2d 478 (Ohio Ct. App. 1996)). *Jaber v. Prudential Insurance Company of America* compelled the Ohio Court of Appeals to make a similar conclusion. 681 N.E.2d at 481. There, the court affirmed summary judgment for the insurer even though the insured challenged whether the agent correctly typed in the information that the insured made to the agent. *Id.* at 481–82 ("[A]ppellant made statements in his application which were incomplete and untruthful, and the policy herein included a warning that such misstatements would render it void ab initio. Appellant's misstatements therefore rendered the [policy] void ab initio").

The Hoffas fall into an identical scenario; they made their statements to Allstate on October 7, 2019 and sent their email to Adams the next day. Doc. No. 27-3 at PageID 216; Doc. No. 32-2 at PageID 301. They stated that throughout their construction, they would not tear down a wall when, in fact, they tore down a half-wall during construction. Doc. No. 10-1 at PageID 112; Doc. No. 32-2 at 301. Allstate relied upon both the statements and the email in deciding to issue the policy in question. Doc. No. 27-3 at PageID 216–18; Doc. 28-6 at PageID 274; Doc. No. 32-1 at PageID 296–300; *see Personal Serv. Ins. Co.*, 2006 WL 2796253, at *5–6 (affirming summary judgment for insurer under *Boggs* standard where applicant marked "No" as to criminal history when he had a prior conviction); *Horton v. Safe Auto Ins. Co.*, No. 00AP-1017, 2001 WL 664421, at *3 (Ohio Ct. App. 2001) (upholding summary judgment for insurer where plain meaning of contractual provision made insurance contract void if there was "false or misleading information furnished by the applicants"). Because these statements turned out to be false, this renders the contract *void ab initio*. *See Med. Prot. Co.*, 940 N.E.2d at 1017–18; *Jaber*, 681 N.E.2d at 481; *see also, e.g., Nationwide Mut. Fire Ins. Co.*, 155 N.E.3d at 841–43 (finding insurance contract *void*

*ab initio* where false answers to application questions were incorporated by reference into insurance policy).

The Hoffas argue that an email is not an "instrument," which would fall outside of the test in *Boggs*; moreover, they argue that their oral representations also cannot be "warranties" as a matter of law.  Doc. No. 27 at PageID 199; Doc. No. 30 at PageID 285.  This misses the mark, as it avoids the fact that (1) the email and statements were incorporated into the application and (2) these false statements nullified the contract between Allstate and the Hoffas.  *See Nationwide Mut. Fire Ins. Co.*, 155 N.E.3d at 841–43; *Med. Prot. Co.*, 940 N.E.2d at 1017–18; *Jaber*, 681 N.E.2d 481.

Finally, the Hoffas argue that the statements in the email and their answers on the application were not necessarily "material" misrepresentations or even false.  Doc. No. 27 at PageID 203.  This resembles a recent rescission claim under an insurance dispute that the Sixth Circuit reviewed.  *Certain Underwriters*, 855 F. App'x at 266.  Finding in the insured's favor, the court noted that "'expressions of personal belief or opinion' … cannot constitute a true warranty." *Id.* at 265–66 (quoting *Care Risk Retention Grp. v. Martin*, 947 N.E.2d 1214, 1225 (Ohio Ct. App. 2010); and then citing *Heath v. Buckeye Union Ins. Co.*, No. L 79-009, 1979 WL 207312, at *3 (Ohio Ct. App. 1979)).  Because the insured only stated a belief of whether certain circumstances could cause legal liability, the court held that this was merely a belief and not a warranty.  *Id.* at 266.

This case is different.  Unlike the statement at issue before the Sixth Circuit, numerous statements in the Hoffas' application and their email were factual -- the prior insurance coverage, damage to the garage, occupancy status, and torn down walls.  Doc. No. 1-7 at PageID  62, 63, 65.  Notably, the Hoffas acknowledge that removing a partition is equivalent to tearing down a wall.

Doc. No. 27 at PageID 203; Doc. No. 27-2 at PageID 301–02. Because the Hoffas, in their email, claimed to not tear down a wall in their construction when they in fact tore down a wall, their warranty is "not literally true," so it "voids a policy *ab initio*." *Certain Underwriters*, 855 F. App'x at 265 (citing *Spriggs*, 182 N.E.2d at 22) (italics added).

As for materiality, the Court does not need to reach the issue. Because the statements here are false and incorporated by reference into Allstate's policy, they pass the test regardless of materiality. *Id.* (first citing *Republic Mut. Ins. Co. v. Wilson*, 35 N.E.2d 467, 468 (Ohio 1940); and then citing *Spriggs*, 182 N.E.2d at 22)); *Unencumbered Assets*, 817 F. Supp. 2d at 1028 (finding second *Boggs* prong satisfied when policy stated that if "any statement or representation in the Application is untrue, this Policy shall be void and of no effect whatsoever …").

The Hoffas' statements were warranties. Breach of these warranties allowed Allstate to rescind the contract. Therefore, summary judgment in Allstate's favor is warranted. Since this means that the insurance contract is *void ab initio*, the Hoffas' counterclaims -- premised on existence of the policy -- are moot. *See Jaber*, 681 N.E.2d at 482.

## IV.

The Court thus **GRANTS** Allstate's motion for summary judgment, **DENIES** the Hoffas' cross motion for partial summary judgment, and **TERMINATES** this case on the docket.

**IT IS SO ORDERED.**

Date:  October 8, 2021              s/Michael J. Newman
                                    Hon. Michael J. Newman
                                    United States District Judge

13